UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
LEVAN VARTANOV,                                               :     2:19-cv-04324
:
             Plaintiff,                                :     <u>NOT FOR ELECTRONIC</u>
:     <u>OR PRINT PUBLICATION</u>
  -against-                                                   :
:     <u>OPINION & ORDER</u>
AMERICAN MODERN HOME INSURANCE CO.     :
:
             Defendant.                              :
:
------------------------------------------------------------------ :
 X

ROSS, United States District Judge:

In March 2019, Leon Vartanov's car was stolen from his driveway. Mr. Vartanov filed an insurance claim with American Modern Home Insurance Co. ("American Modern"). Mr. Vartanov brings this action to challenge the denial of that claim. The parties both moved for summary judgment. Because the parties dispute material facts regarding the circumstances surrounding the theft, I deny both motions.

## BACKGROUND

### I.    The Policy

On October 26, 2018, Levan Vartanov purchased a 2019 Ferrari Portofino ("the Vehicle") from Miller Motorcars, Inc. for $273,236.85. Def.'s Resp. to Pl.'s Rule 56.1 Statement ¶ F, ECF No. 30-41 ("Def.'s R. 56.1"). American Modern issued an insurance policy ("the Policy") for the Vehicle with the effective dates of November 6, 2018 through November 6, 2019. *Id.* ¶¶ C–D. The Policy listed Mr. Vartanov as the "principal operator" and Mrs. Vartanov as the "occasional operator." *Id.* ¶ E. The Policy generally insured the Vehicle for losses due to car accidents, thefts and other damages. *See* Insurance Policy 37, 43–44, Lavroff Decl. Ex. 1, ECF No. 30-6.

1

The Policy states: "We will pay for loss to 'your covered auto' caused by…[*inter alia*] [t]heft or larceny." *Id.* at 43–44. The Policy then provides a lengthy list of exclusions. *Id* at 44–46, 63. These exclusions are circumstances under which American Modern will not pay for any damages sustained. *Id.* at 44. The Exclusion at issue in this case is the following:

> 14. Loss or Damage to "your covered auto" when not stored in a locked "garage facility."
> "Garage facility" as used in this part is a permanent structure which is capable of protecting the vehicle from the elements, is fully enclosed, and all entranceways must have a functioning locking mechanism.
> This Exclusion (14) does not apply to "your covered auto" when it is being used for "Occasional Pleasure Use."

*Id.* at 63. Elsewhere in the Policy, "Occasional Pleasure Use" is described as:

> "Occasional pleasure use" means the vehicle is:
>
> 1. [U]sed for activities consistent with and related to participation in vehicle exhibitions, vehicle club activities, parades, leisure/pleasure drives, or maintenance;
>
>    a. The following uses are not considered leisure/pleasure drives:
>       (1) As your "principal means of transportation";
>       (2) As substitute transportation for a "principal means of transportation";
>       (3) To or from work;
>       (4) To or from school; or
>       (5) For business or commercial use
>
> 2. [I]n transit to or from, in attendance at, or located at the lodging of the named insured during overnight vehicle exhibitions, vehicle shows, vehicle club activities, leisure/pleasure drives, or parades; or
>
> 3. [I]n transit to or from or located at a repair/restoration facility for service or restoration related function(s).

*Id.* at 61. The parties agree that this Policy was in effect at the time of the theft. *See* Def.'s R. 56.1 ¶ D.

## II. Facts Surrounding the Theft of the Vehicle

On March 7, 2019, Mrs. Vartanov took the Vehicle for a drive and shortly after leaving

2

home noticed a dashboard warning signal stating "Warning Limited Performance of The Engine." *Id.* ¶¶ P–Q. Mrs. Vartanov called her husband to inform him of the warning signal and texted him a photograph of the signal. *Id.* ¶ R.

Mr. Vartanov texted the picture of the warning light to Alex DeLuca, a sales representative at Miller Motorcars. *Id.* ¶¶ S–U. Mr. DeLuca responded, "on the Portofino?" *Id.* ¶ U. Mr. Vartanov called Mr. Deluca to discuss the issue. *Id.* ¶ V. He also spoke with a Miller Motorcars service-department employee, Christina DePinto. *Id.* ¶ W. Ms. DePinto followed up by calling Mrs. Vartanov and attempting to troubleshoot the problem over the phone. *Id.* ¶ X. Ms. DePinto asked Mrs. Vartanov whether she felt safe driving the vehicle home. *Id.* ¶ Y. Mrs. Vartanov then drove the vehicle home. *Id.* ¶ Z.

Plaintiff alleges that Ms. DePinto did not tell Mrs. Vartanov or Mr. Vartanov that they needed to call back to schedule an appointment to facilitate the pickup of the vehicle. *Id.* ¶¶ AA–CC. Mrs. DePinto testified in her deposition that she told Mrs. Vartanov "you can call me [back] and let me know if you would like for me to send a truck to pick up the car." *Id.* (quoting DePinto Dep. 24:5–15, Lavroff Decl. Ex. 7, ECF No. 30-12).

At 11:04 a.m., Mr. Vartanov sent a text message to Mr. DeLuca stating "Please pick up the car." *Id.* ¶ DD. Mr. DeLuca responded "[y]es Christina working on it." *Id.* Mr. DeLuca relayed Mr. Vartanov's request to Ms. DePinto. *Id.* ¶ HH. Defendant alleges that because of the prior phone conversation, Miller Motorcars was waiting for a call from plaintiff before arranging pickup of the Vehicle. *Id.* ¶ GG.

Mr. Vartanov states that he believed that no further action was required to arrange the pickup, and that the car would be picked up that day. *Id.* He alleges that in his five years of experience as a customer at Miller Motorcars, he had consistently contacted Mr. DeLuca with

3

maintenance issues, and then Mr. DeLuca would make arrangements for Miller Motorcars to pick the vehicle up from his home. *Id.* ¶¶ JJJ–NNN. If Mr. Vartanov needed a vehicle picked up when nobody was home, he left the car in his driveway. *Id.* ¶ OOO. Defendant disputes Mr. Vartanov's account of the history of Miller Motorcars' maintenance pickups. *Id.* ¶¶ JJJ–OOO.

      Mr. Vartanov instructed his wife to leave the Vehicle outside to be picked up. *Id.* ¶ EE. Mrs. Vartanov left the vehicle in the driveway, unlocked and with the key in it. *Id*. Mrs. Vartanov then left for work, and did not return until 11:30 p.m. that evening. *Id.* ¶ LL. Mr. Vartanov had been at work the entire day, and returned home at approximately 7:00 p.m. *Id.* ¶ MM. When Mr. Vartanov returned home, he did not see that the Vehicle was still in the driveway because it was parked on the other side of the house in front of the garage. *Id.* Mrs. Vartanov evidently did see the vehicle in the driveway in front of the garage when she arrived home. *See id.* ¶ PP. Neither Mr. nor Mrs. Vartanov planned to be home during the day on March 7 following their conversations with Mr. DeLuca and Ms. DePinto. *Id.* ¶ OO.

      The next day, March 8, 2019, Mr. Vartanov left his home around 8:30 a.m. and passed the garage. *Id.* ¶ NN. Later that morning, Mrs. Vartanov told Mr. Vartanov that the Vehicle had been in the driveway when she returned home the previous night. *Id.* ¶ PP. Mr. Vartanov subsequently contacted Mr. DeLuca to inquire into the status of the pickup of his vehicle. *Id.* ¶ QQ. Mr. DeLuca informed him the car had not been picked up. *Id.*

      That morning, the Vehicle was stolen from the Vartanov's driveway. *Id.* ¶ SS. The theft was confirmed by a review of the Vartanov's home security system, which showed an individual running up to the car, starting it, and driving away. *Id.* ¶ RR. Mr. Vartanov promptly reported the theft to both the local police and American Modern. *Id.* ¶¶ TT–UU. The value of the Vehicle on the date of the theft was $230,543.46, subject to a $1,000 deductible. *Id.* ¶ L.

4

Mr. Vartanov submitted an insurance claim to American Modern pursuant to the insurance Policy described above. *See id.* ¶ A. American Modern denied the claim on May 28, 2019. *Id.* Mr. Vartanov then filed this action.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, there are disputes between the parties as to key facts, which preclude summary judgment.

The parties agree that New York contract law applies. *See* Pl.'s Mem. of Law in Opp. to Def.'s Mot. & in Supp. of Pl.'s Cross-Mot. 10–11, ECF No. 30-21 ("Pl.'s Br."); Def.'s Mem. of Law in Supp. of Def.'s Mot. 9–10, ECF No. 30-2 ("Def.'s Br."). The role of the court is to enforce the unambiguous terms of the contract as written. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1989). Under New York law "[a]n insurance policy should be read in light of common speech and the reasonable expectations of a businessperson." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (N.Y. App. Div. 2004)). In general, insurance policies are read narrowly in favor of the insured. *MDW Enters., Inc. v. CNA Ins. Co.*, 772 N.Y.S.2d 79, 82 (N.Y. App. Div. 2004). Where there is ambiguity, insurance policy exclusions are construed narrowly, and exceptions to exclusions are construed broadly. *See Parks Real Estate Purchasing Grp.*, 472 F.3d at 42–43. The insurer bears the burden of proving applicability of an exclusion, and the insured bears the burden of proving the applicability of an exception to an exclusion. *Id.*

5

American Modern has clearly met its burden of demonstrating the applicability of the exclusion. Exclusion 14 unambiguously states that American Modern is not liable for losses incurred when the Vehicle is not in a locked garage. *See* Insurance Policy 63. There is no dispute that the Vehicle was in the driveway and not a locked garage at the time of the theft. Thus, the exclusion applies.

The question then turns to whether Mr. Vartanov can meet his burden of proving that an exception to the exclusion applies. The exception he claims is "[o]ccasional pleasure use[,]" and specifically "activities consistent with and related to…maintenance[.]" *Id.* at 61. Plaintiff alleges that based on his conversations with Miller Motorcars staff and his history with Miller Motorcars, he left the vehicle in his driveway for activities related to maintenance, namely, Miller Motorcars sending a truck to pick the Vehicle up. *See* Pl.'s Br. 11–12.

Defendant has a different view. American Modern argues that leaving the Vehicle unsecured in the driveway for hours without scheduling an appointment for pickup was not "consistent with" nor "related to" maintenance. Def.'s Br. 14. The difference between the two parties' positions largely rests on a dispute of a material fact: whether Ms. DePinto instructed plaintiff that he needed to call to make an appointment for the car to be picked up. *See* Def.'s R. 56.1 ¶¶ AA–GG. Without resolving this and other factual issues surrounding the circumstances of the theft, I cannot determine as a matter of law whether the exception to the exclusion applies.

Plaintiff also argues that American Modern claims adjuster Paul Naber explicitly admitted in his deposition that plaintiff's loss was covered by the policy. Pl.'s Br. 12. This would be relevant because "New York Courts routinely bind insurance carriers based on admissions of liability by their claims adjusters." *Id.* (citing *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002)). But Mr. Vartanov has cherry-picked and misconstrued Naber's testimony in an

6

attempt to make it appear as an admission of liability. *Id.* Even drawing all inferences in favor of Mr. Vartanov, Naber's testimony could not constitute an admission of liability. Naber explicitly testified that leaving the car in the driveway would be activity consistent with and related to maintenance of the vehicle "if it was different circumstances[.]" Naber Dep. 136:13–23, Matulewicz-Crowley Decl. Ex. 7. Thus, there was no admission that the circumstances present in this case fit the parameters of the exception to the exclusion.

## CONCLUSION

The parties disagree about the circumstances surrounding the March 7, 2019 theft of Mr. Vartanov's vehicle. These disputes of material fact bear on whether the exception to exclusion applies, and therefore preclude a grant of summary judgment. The cross-motions for summary judgment are denied.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     July 10, 2020
           Brooklyn, New York